# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### NORTHERN DIVISION
### 2:10-CR-21-FL-1
### 2:13-CV-40-FL

| | | |
|---|---|---|
| TERRICIOUS BURNELL BROOKS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | **MEMORANDUM AND** |
| v. | ) | **RECOMMENDATION** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

This case comes before the court on petitioner's pro se motion (D.E. 109) to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 ("§ 2255") and the government's motion to dismiss or, in the alternative, for summary judgment (D.E. 119). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* D.E. dated 14 Nov. 2013). On 16 April 2014, an evidentiary hearing ("§ 2255 hearing") was conducted on the claim raised in Ground 1 of petitioner's motion. The motions have been fully briefed and are ripe for ruling.[1] For the reasons stated herein, it will be recommended that petitioner's motion be granted with respect to Ground 1, his sentence be vacated, and he be permitted to withdraw his guilty plea; and that the government's motion to dismiss or for summary judgment be granted with respect to all other claims, and these remaining claims be denied.

---

[1] Plaintiff did not file a separate memorandum supporting his motion, but rather essentially incorporated a memorandum into the motion. The government filed with its motion a supporting memorandum (D.E. 120), and petitioner filed a response (D.E. 122) in opposition. The parties each filed supplemental memoranda after the § 2255 hearing (D.E. 133, 134) as authorized by the court. (*See* Minute Entry text at D.E. 128).

# BACKGROUND

## I. PETITIONER'S CONVICTION, SENTENCING, AND APPEAL

On 2 July 2010, petitioner was charged in a 6-count indictment with: conspiracy to possess with the intent to distribute more than 50 grams of cocaine base (*i.e.*, crack) and more than 500 grams of cocaine within 1,000 feet of a public or private school or playground beginning not later than January 2008 and continuing until on or about 22 July 2010 in violation of 21 U.S.C. §§ 846 and 860 (Indict. (D.E. 1) ct. 1) ("§ 860 conspiracy charge"); distribution of a quantity of cocaine base, and aiding and abetting the same, within 1,000 feet of a public or private school or playground on or about 23 October 2009 in violation of 21 U.S.C. §§ 841(a)(1) and 860 and 18 U.S.C. § 2 (*id.* ct. 2); distribution of more than 5 grams of cocaine base, and aiding and abetting the same, within 1,000 feet of a public or private school or playground on or about 28 October 2009 in violation of 21 U.S.C. §§ 841(a)(1) and 860 and 18 U.S.C. § 2 (*id.* ct. 3); distribution of a quantity of cocaine base on or about 3 April 2010 in violation of 21 U.S.C. § 841(a)(1) (*id.* ct. 4); and distribution of a quantity of cocaine base within 1,000 feet of a public or private school or playground on or about 6 April 2010 and 4 May 2010 in violation of 21 U.S.C. §§ 841(a)(1) and 860 (*id.* cts. 5, 6). The indictment also charged co-defendant Ronald Bonds ("Bonds") with counts 1 to 3.

On 14 February 2011, petitioner pleaded guilty (*see* D.E. 49; Transcript of Arraignment and Rule 11 Hearing ("Arr. Tr.") (D.E. 89)), pursuant to a plea agreement (D.E. 51), to the § 860 conspiracy charge in count 1. Petitioner's sentencing hearing was initiated on 2 June 2011 (*see* D.E. 73; Transcript of 2 June 2011 Sentencing Hearing ("1st Sent. Tr.") (D.E. 93)), but was continued to 11 July 2011 (for reasons discussed in more detail below). On that date, petitioner was sentenced to 252 months of imprisonment and 10 years of supervised release. (*See*

Transcript of 11 July 2011 Sentencing Hearing ("2d Sent. Tr.") 23:17-19, 22-23; J. (D.E. 78) 2,

3). Petitioner's sentence of imprisonment reflects a 30% reduction based on his having provided

substantial assistance to the government. (*See* Gov.'s Mot. for Downward Depart. (D.E. 72); 1st

Sent. Tr. 3:10-19; 2d Sent. Tr. 23:12-15).

Petitioner appealed his sentence, and, on 29 March 2011, the appeal was dismissed, in

part, on the grounds that petitioner had waived in the plea agreement his right to appeal his

sentence. *See United States v. Brooks*, 470 Fed. Appx. 196, 197 (4th Cir. 2011). Petitioner's

conviction was affirmed pursuant to *Anders v. California*, 386 U.S. 738 (1967). *Id.*

## II. PROCEEDINGS ON THE INSTANT MOTIONS

On 11 July 2013, petitioner timely filed the instant motion. On 11 October 2013, the

government filed its motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, or alternatively, for summary judgment under Rule 56, along with a supporting

memorandum. In accordance with *Roseboro v. Garrison,* 528 F.2d 309, 310 (4th Cir. 1975) (per

curiam), the Clerk notified petitioner (*see* D.E. 121) of the government's motion under Rule 56,

the consequences of failing to respond,[2] and the deadline for his response. On 4 November

2013, petitioner filed his response in opposition to the government's motion.

By orders entered 13 March 2014 (D.E. 123, 124), the court scheduled the § 2255 hearing

on the claim asserted in Ground 1 of petitioner's motion and directed the Office of the Federal

Public Defender to appoint counsel ("§ 2255 counsel") to represent him in connection with that

---

[2] More specifically, petitioner was informed as follows:

> You cannot rely only on the complaint or other pleadings to defeat a motion for summary
> judgment, if the defendants properly meet their burden under Rule 56. Rule 56(c) explains what
> you must do to oppose the motion for summary judgment. In summary, you must respond to the
> motion with affidavits, declarations, citations to particular parts of the record, or other material in
> such a manner so as to persuade the court that a genuine issue of material fact remains to be
> determined, and that the case should proceed to trial or evidentiary hearing.

(*Roseboro* Notice 1).

claim. In Ground 1, petitioner claims that he received ineffective assistance of trial counsel due to counsel's failure to properly represent him with respect to the § 860 conspiracy charge in count 1 of the indictment. (Pet. 4-9). Petitioner's § 2255 counsel entered his appearance on 26 March 2014. (*See* D.E. 126).

On 16 April 2014, the undersigned conducted the § 2255 hearing (D.E. 128) on Ground 1 of petitioner's motion. At the hearing, petitioner testified on his behalf, and the government presented the testimony of Marcia Stewart, petitioner's trial attorney. (Transcript of § 2255 Hearing ("Tr.") (D.E. 130)). The court also admitted six exhibits offered by petitioner (*see* Hrg. Ex. List (D.E. 129)), all photographs of the alleged "playground" that was the subject of the charges against petitioner. (Pet.'s Exs. 1-6; Tr. 12:23-25). At the government's request, the court also admitted the transcript of petitioner's arraignment hearing (D.E. 89) and the first sentencing transcript. (Gov.'s Exs. 1-2; Tr. 27:14 to 28:24). Petitioner and the government filed their supplemental memoranda on 5 May 2014 and 15 May 2014, respectively.

## III. PETITIONER'S CLAIMS

In his motion, petitioner claims that: (1) as previously noted, he received ineffective assistance of trial counsel due to counsel's failure to adequately represent him with respect to the § 860 conspiracy charge (Pet. 4-9, Ground 1); (2) he is entitled to be resentenced in accordance with the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 ("FSA") under *Dorsey v. United States*, 132 S. Ct. 2321 (2012) (Pet. 10-14, Ground 2); (3) he received ineffective assistance of trial counsel due to counsel's failure to make certain legal and factual objections to the court's sentencing calculation under the United States Sentencing Guidelines ("Guidelines")[3] (Pet. 15-22, Ground 3); (4) he received ineffective assistance of trial counsel due

---

[3] Except where otherwise indicated, all references to the Guidelines are to the 2010 Guidelines, including the emergency amendments to § 2D1.1 pursuant to the FSA effective 1 November 2010.

to counsel's failure to object to alleged prosecutorial misconduct (Pet. 20-22, Ground 3); and (5) he received ineffective assistance of appellate counsel due to counsel's failure to raise certain arguments on appeal (Pet. 23-26, Ground 4). The court will address each of the contention in turn below.

## APPLICABLE LEGAL PRINCIPLES

### I. STANDARD OF REVIEW FOR § 2255 MOTIONS

Pursuant to § 2255, a prisoner may seek correction or vacation of a sentence on the grounds that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). "[T]he burden of proof is on the petitioner to establish his [§ 2255] claim by a preponderance of the evidence. *Albarran-Rivera v. United States*, No. 7:10-CR-95-FL-3, 2013 WL 5570956, at *7 (E.D.N.C. 9 Oct. 2013) (citing *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958) (per curiam) ("Because the proceeding under 28 U.S.C. § 2255 is a civil collateral attack upon the judgment of conviction, the burden of proof is upon petitioner to establish [his claim] by a preponderance of evidence . . . .")). Generally, an evidentiary hearing is required under § 2255 "[u]nless it is clear from the pleadings, files, and records that the prisoner is not entitled to relief." *United States v. Rashaad*, 249 Fed. Appx. 972, 973 (4th Cir. 2007) (citing *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970)).

### II. MOTIONS TO DISMISS UNDER RULE 12(b)(6) IN § 2225 PROCEEDINGS

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of claims for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court may consider a motion to dismiss pursuant to Rule 12(b)(6) challenging the legal sufficiency of a

§ 2255 motion. *See United States v. Reckmeyer*, No. 89-7598, 1990 WL 41044, at *4 (4th Cir. 2 Apr. 1990); *see also Walker v. True*, 399 F.3d 315, 319 (4th Cir. 2005) (vacating district court's order allowing the government's motion to dismiss petitioner's motion under 28 U.S.C. § 2254 ("§ 2254")[4] because the district court did not properly apply the Rule 12(b)(6) standard when it failed to assume all facts pleaded by petitioner to be true and considered material not included in the petition); Rule 12, Rules Governing § 2255 Proceedings (expressly allowing the application of the Federal Civil Rules where "they are not inconsistent with any statutory provisions or these [§ 2255] rules"); Fed. R. Civ. P. 81(a)(4) (providing that the Federal Rules of Civil Procedure may be applied in § 2255 proceedings where a particular practice has not been specified by § 2255 and where such practice has "previously conformed to the practice in civil actions").

A motion to dismiss should be granted only if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). In analyzing a Rule 12(b)(6) motion, a court must accept as true all well-pleaded allegations of the challenged pleading. *Nemet Chevrolet Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (court must accept as true all factual allegations of the complaint). All reasonable factual inferences from the allegations must be drawn in plaintiff's favor. *Kolon Indus., Inc.*, 637 F.3d at 440 (citing *Nemet Chevrolet Ltd.*, 591 F.3d at 253). However, case law requires that the factual allegations create more than a mere possibility of misconduct. *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *Iqbal*, 556 U.S. at 679). The allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief

---

[4] Section 2254 also incorporates the Federal Rules of Civil Procedure. *See* Rule 12, Rules Governing § 2254 Proceedings; *see also* Fed. R. Civ. P. 81(a)(4).

that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Likewise, a pleading purporting to assert a claim is insufficient if it offers merely "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555 (internal quotation marks omitted)).

## III. SUMMARY JUDGMENT STANDARD

"When the district court denies § 2255 relief without an evidentiary hearing, the nature of the court's ruling is akin to a ruling on a motion for summary judgment." *United States v. Poindexter*, 492 F.3d 263, 267 (4th Cir. 2007). A motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In analyzing whether there is a genuine issue of material fact, all facts and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996). The burden is on the moving party to establish the absence of genuine issues of material fact, and "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323; *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991) ("[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate."). If the movant meets its burden, then the nonmoving party must provide the court with specific facts demonstrating a genuine issue for trial in order to survive summary judgment. *Celotex*, 477 U.S. at 323. The nonmoving party is not permitted to rest on conclusory allegations or denials,

and a "mere scintilla of evidence" will not be considered sufficient to defeat a summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV.  INEFFECTIVE ASSISTANCE OF COUNSEL

To state a claim of ineffective assistance of counsel, a petitioner must satisfy a two-prong test. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984).  First, a petitioner must show that the representation he received fell below an objective standard of reasonableness.  *Id.* at 688. The reviewing court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." *Id.* at 689.  Therefore, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*  Further, "[a] petitioner seeking post-conviction relief bears a heavy burden to overcome this presumption, and the presumption is not overcome by conclusory allegations." *Hunter v. United States*, Civil No. 1:09cv472, Crim. No. 1:06cr251-3, 2010 WL 2696840, at *3 (W.D.N.C. 6 July 2010).

As to the second prong, a petitioner must show that he was prejudiced by the ineffective assistance. *Strickland*, 466 U.S. at 692.  This prong is satisfied where there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  The prejudice a defendant is required to show depends on the nature of the alleged ineffective assistance.

Specifically, in the context of a guilty plea, a petitioner must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  Further, where the alleged ineffective assistance relates to a defendant's acceptance of a plea offer, "the prejudice element turns on whether counsel's performance affected the defendant's final decision to accept or reject

a plea offer." *Carillo-Morales v. United States*, 952 F. Supp. 2d 797, 806-07 (E.D. Va. 2013) (citing *Hill,* 474 U.S. at 59)).  The United States Supreme Court has further explained that "to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).  Such a determination "'will depend in part on a prediction of what the outcome of a trial might have been.'" *United States v. Kayode*, 777 F.3d 719, 724 (5th Cir. 2014) (quoting *Armstead v. Scott,* 37 F.3d 202, 206 (5th Cir. 1994)).

To demonstrate prejudice with respect to a sentencing proceeding, a petitioner must show a reasonable probability that, but for counsel's deficient performance, he would have received a lower sentence.  *See Glover v. United States*, 531 U.S. 198, 202-04 (2001); *see also United States v. Smith*, 497 Fed. Appx. 269, 272 (4th Cir. 2012) ("Prejudice exists when an error results in a longer sentence than would otherwise have been imposed.").

## ANALYSIS

### I.    NEED FOR AN EVIDENTIARY HEARING

As previously noted, the court conducted a hearing on Ground 1 of petitioner's motion. With respect to petitioner's remaining claims, the court has considered the record in this case and applicable authority to determine whether an evidentiary hearing is needed to resolve them.  The court finds that the existing record clearly shows that petitioner is not entitled to relief on these remaining claims and that an evidentiary hearing is not needed on them.  The court will therefore proceed without an evidentiary hearing on those claims.

## II.    INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR FAILURE TO PROVIDE ADEQUATE REPRESENTATION REGARDING THE § 860 CONSPIRACY CHARGE (Pet. 4-9, Ground 1)

### A.    The "Playground" Element of § 860

Section 860(a) provides, in relevant part, for "twice the maximum punishment" and "at least twice any term of supervised release" authorized by 21 U.S.C. § 841(b) for any person who

> violates section 841(a)(1) of this title . . . by distributing, *possessing with intent to distribute*, or manufacturing a controlled substance in or on, or *within one thousand feet of, the real property comprising* a public or private elementary, vocational, or secondary school or a public or private college, junior college, or university, or *a playground*, or housing facility owned by a public housing authority, or within 100 feet of a public or private youth center, public swimming pool, or video arcade facility . . . .

21 U.S.C. § 860(a) (emphasis added).

For the purposes of this offense, the term "playground" is defined as follows:

> any outdoor facility (including any parking lot appurtenant thereto) intended for recreation, open to the public, and with any portion thereof containing three or more separate apparatus intended for the recreation of children including, but not limited to, sliding boards, swingsets, and teeterboards.

21 U.S.C. § 860(e)(1).  Thus, the parts of the definition are:  "(1) an outdoor facility, (2) intended for recreation, (3) open to the public, and (4) containing three or more separate apparatus intended for the recreation of children."  *See United States v. Parker*, 30 F.3d 542, 552 (4th Cir. 1994) (emphasis omitted).

Section 860 is a substantive offense, rather than simply an enhancement of a sentence imposed under 21 U.S.C. § 841(a)(1), because it contains an element not in that statute—namely, occurrence of the offense conduct within the specified proximity to various types of facilities.  *See United States v. Sepulveda-Hernandez*, 752 F.3d 22, 27 (1st Cir. 2014); *United States v. Osborne*, 673 F.3d 508, 513 (6th Cir. 2012) (collecting cases).  Therefore, the parts of the statutory definition of "playground" must be proven beyond a reasonable doubt to sustain a

conviction under § 860(a) when offense conduct within 1,000 feet of a playground is charged. *See Parker*, 30 F.3d at 552 (finding insufficient evidence to support a jury's verdict where the government failed to present evidence that the alleged playground contained "three or more separate apparatus"); *see also United States v. Rojas Alvarez*, 451 F.3d 320, 328 (5th Cir. 2006) ("We join the many other circuits to consider the issue and hold that the congressional definition of playground must be proven as an element of a § 860(a) offense."); *Flowers v. United States*, 560 F. Supp. 2d 710, 717-18 (N.D. Ind. 2008) (granting petitioner's § 2255 motion on the grounds that both trial and appellate counsel were ineffective where they did not challenge the government's failure to present any evidence at trial demonstrating that the alleged playground contained any play apparatus).

It follows, and courts have recognized, that conviction for conspiracy to commit an offense under § 860(a) within 1,000 feet of a "playground," as here, also requires proof beyond a reasonable doubt of the parts of the definition of "playground." *See*, *e.g.*, *United States v. Eagle*, 590 F. Supp. 2d 1179, 1181-82 (D.S.D. 2008); *see also Sepulveda-Hernandez*, 752 F.3d at 26, 27-28 (conspiracy under § 860(a) based on proximity to a "youth center"). The double penalties provided for violation of § 860(a) apply to conspiracy to violate § 860(a), pursuant to 21 U.S.C. § 846 ("Any person who . . . conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.").

### B. Failure to Advise Petitioner of the Parts of the Definition of "Playground"

Petitioner's principal contention of ineffective assistance of counsel with respect to the § 860 conspiracy charge is that his trial counsel failed to inform him of the parts of the definition of "playground." Petitioner contends that, as a result, he was unaware of the definitional parts at

the time he pleaded guilty to the § 860 conspiracy charge. Petitioner further asserts that had he known the parts of the definition of "playground," he would not have pleaded guilty to the § 860 conspiracy charge. He seeks a reduction of this charge to the lesser-included offense of conspiracy to possess with the intent to distribute in violation of 21 U.S.C. §§ 846 and 841, and to be resentenced accordingly.[5] For the reasons stated below, trial counsel's failure to advise petitioner as alleged satisfies both the deficient performance and prejudice prongs of the *Strickland* test.

## 1. Deficient Performance of Counsel

Petitioner's trial counsel had a duty to advise him of the parts of the definition of "playground" before he pleaded guilty. "Where a defendant pleads guilty to a crime without having been informed of the crime's elements, . . . the plea is invalid." *Bradshaw v. Stumpf*, 545 U.S. 175, 182-83 (2005) (citing *Henderson v. Morgan,* 426 U.S. 637 (1976)); *see also Bousley v. United States*, 523 U.S. 614, 618 (1998) ("[A] plea does not qualify as intelligent unless a criminal defendant first receives real notice of the true nature of the charge against him . . . ."); *Harrison v. Warden, Maryland Penitentiary*, 890 F.2d 676, 677-78 (4th Cir. 1989) ("A guilty plea cannot be accepted 'unless the defendant received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" (quoting *Henderson,* 426 U.S. at 645) (internal quotations omitted)). While the United States Supreme Court has "never held that the judge must himself explain the elements of each charge to the defendant on the record," the Constitution requires that "the record accurately reflect[] that

---

[5] (*See* Pet. 4, 9). As noted by the government, petitioner testified at the § 2255 hearing that he was seeking only a two-point reduction in his Guidelines range. (Tr. 7:22-24; 8:6-11). His § 2255 counsel clarified, however, that in addition to the two-point reduction, he was seeking to retain the 30% reduction of his sentence that he received for substantial assistance. (Tr. 31:1-6). During his closing argument, petitioner's § 2255 counsel further indicated that petitioner was seeking to be sentenced for the lesser-included offense. (Tr. 30:7-15). Thus, the court does not interpret the testimony of petitioner or the statements of his § 2255 counsel to be altering the relief originally sought in petitioner's motion.

the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel." *Bradshaw*, 545 U.S. at 183. Further, "the court usually may rely on . . . counsel's assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty," and a defendant must overcome this "natural inference." *Id*.

There is no factual dispute that counsel never advised petitioner of the parts of the statutory definition of "playground." At the evidentiary hearing, petitioner testified that Ms. Stewart never discussed the parts of the definition with him. (Tr. 7:1-7). His testimony was fully corroborated by Ms. Stewart. She testified that, while she did discuss with him the proximity of his home to the alleged playground (*id*. at 20:17-1), she did not discuss with him the definition of "playground" (*id*. at 20:15-19). The failure of counsel to fully advise a defendant of the nature of the charges unarguably falls below an objective standard of reasonable representation. Accordingly, the court concludes that the first prong of the *Strickland* test has been met.

### 2. Prejudice

The court further concludes that petitioner was prejudiced in several respects by his counsel's deficient performance and that the second prong of *Strickland* is therefore satisfied. First, counsel's failure to fully advise petitioner of the parts of the definition of "playground" rendered his guilty plea involuntary because the record is completely devoid of any indication that petitioner was otherwise aware of them. *See Bradshaw*, 545 U.S. at 182-83. At the evidentiary hearing, petitioner testified that he was not aware of the parts of the definition of "playground" at his arraignment when he informed the court that he understood the charges. (Tr. 11:17 to 12:3). Rather, he testified that he did not learn of the parts of the definition of

"playground" until after he arrived at his assigned correctional facility and conducted independent legal research on his case. (*Id*. at 7:13-17).

The record fully corroborates his assertion. The parts of the definition of "playground" are not referenced in the indictment, the plea agreement, or the presentence investigation report ("PSR") (D.E. 70). Specifically, both the indictment and the plea agreement allege only that the offense occurred within 1,000 feet of "a school or playground." (*See* Indict. 1; Plea Agmt. 4). The description of the offense conduct in the PSR states only that "[t]he controlled purchase location was . . . within 1,000 feet of a playground." (PSR ¶ 12). At petitioner's arraignment and Rule 11 hearing, petitioner waived a formal reading of the charges (Arr. Tr. 16:5-16), and the only description of the charges provided by the court during the Rule 11 hearing, again, made reference only to the drug purchases being within 1,000 feet of "real property comprising a public or private school or playground" (*see* Arr. Tr. 17:2-7, 22-24; 18:9-11; 19:6-9; 20:9-11; 23:8-13, 17-25). In its presentation of the factual basis for petitioner's plea, the government stated that the four drug purchases that were the subject of the charged conspiracy were made at petitioner's residence, "which was located 986 feet from a public playground in Plymouth, North Carolina." (Arr. Tr. 24:23-25). The government provided no further information about the subject playground, and petitioner's counsel made no objection on this ground. Neither was the playground element discussed at petitioner's subsequent sentencing hearings. (*See generally* 1st Sent. Tr.; 2d Sent. Tr.).

The court further concludes that petitioner has demonstrated that had he known what the government would have been required to prove as to the playground element, he would not have pleaded guilty to the charge. The evidence and argument presented at the § 2255 hearing and in supplemental briefing shows that there is a substantial basis for arguing that the subject

playground does not meet the statutory definition.  Of particular significance is that the alleged playground contained only two stand-alone structures:  A free-standing swing set containing two swings (*see* Pet.'s Exs. 2, 3, 6; Tr. 19:11-19) and a play structure, which included an elevated platform, ladders, a climbing rope, a slide, a rock-climbing wall, a tire swing, and a regular swing (*see* Pet.'s Exs. 2-5; Tr. 5:18 to 6:4; 19:11-19; 23:9-19).  The statute does not define "apparatus," except by reference to a nonexcusive list of examples:  "sliding boards, swingsets, and teeterboards."  21 U.S.C. § 860(e)(1).  Consequently, the courts have been left with the difficult task of determining whether a variety of other types of equipment or structures qualify as recreational "apparatus" under the statute.  *See, e.g., Parker*, 30 F.3d at 552 (holding that while a basketball hoop would constitute an "apparatus," the blacktop surface of the basketball court would not); *see also United States v. Migi*, 329 F.3d 1085, 1089 (9th Cir. 2003) (holding that "basketball courts, softball fields, and skating rinks are each 'apparatus intended for the recreation of children'" after applying a definition of "apparatus" as "'a collection or set of materials . . . [or] . . . appliances . . . designed for a particular use.'" (quoting *Webster's Third New Int'l Dictionary* 102 (unabridged 1986)) (alterations in original)); *United States v. Johnson*, No. 97-10435, 1997 WL 811737, at *1 (5th Cir. 15 Dec. 1997) ("[E]vidence of four baseball backstops, three of which were for either little league or pee-wee little league fields, was more than sufficient to prove the existence of three separate apparatus intended for the recreation of children.").

Further, whether a single play structure containing several types of play equipment qualifies as one or more "separate apparatus" appears to have received little, if any, definitive treatment by the courts.  *See United States v. West*, 671 F.3d 1195, 1197-1201 (10th Cir. 2012) ("We also *assume for the sake of argument* that . . . two jungle-gyms connected by a set of

monkey bars constitute only one 'apparatus.'"); *see also Gee v. State*, No. 11-04-00033-CR, 2005 WL 1789088, at *2 (Tex. App. 28 July 2005) (applying a comparable state statute with a materially similar definition of "playground" and concluding that the subject playground contained the requisite three separate apparatus "even if we were to consider the piece of equipment containing two slides and a rope ladder as a single separate apparatus"). Thus, there was ample room for legal argument in this case that the two play structures at issue did not constitute "three or more separate apparatus."

The evidence further shows that the alleged playground was located on the property of a private apartment complex, thereby raising a reasonable question as to whether it was "open to the public" as also required by the statute. 21 U.S.C. § 860(e)(1). In his motion, petitioner states that he lived in the apartment complex from 2001 to 2003, and that during this period management told him that the general public could not use the playground. (Pet. 6; *see also* Tr. 12:4-7). Photographs of the playground that were admitted without objection at the § 2255 hearing (*see* Pet.'s Exs. 1-6 (D.E. 129-1 to 129-6)) show that the playground was located on property adjacent to the apartment buildings (Pet.'s Exs. 2, 4, 5; *see also* Tr. 18:2-7, 22-25) and positioned directly in front of the apartment office (*see* Pet.'s Ex. 2; *see also* Tr. 19:3-6). One of the photographs further shows that the sign for the apartment complex was in close proximity to the playground, making it even clearer that the playground was on the property of the complex. (*See* Pet.'s Ex. 6). The government presented no evidence to indicate that the playground was "open to the public." As acknowledged by the government at the § 2255 hearing (Tr. 41:10-12), the case law on this issue is limited. *See, e.g., Parker*, 30 F.3d at 552 (holding that "a reasonable jury could infer the first three parts of that definition [for "playground" (*i.e.,* "outdoor facility," "intended for recreation," and "open to the public" parts of the "playground")] from the

mere fact that Tonsler Park [where the alleged "playground" is located] is called a 'park'");

*United States v. Osbourne*, 145 F.3d 1327 (Table), 1998 WL 279581 (4th Cir. 1998) ("The issue

of whether the playground was 'open to the public' was a question of fact for the jury." (citing

*United States v. Horsley,* 56 F.3d 50, 52 (11th Cir. 1995) (holding that the district court properly

submitted the question of whether an alleged playground was "open to the public" because the

issue "could not be resolved without reference to the evidence in the record regarding the use of

the Jordan Park Playground and the school's attempts, if any, to prohibit the public from using

the playground.")).

As previously noted, petitioner was familiar with the alleged playground given that he

had previously resided in the apartment complex. This supports his contention that had he

known what the government would have been required to prove as to the playground, he would

not have pleaded guilty to the charge. Accordingly, the court concludes that petitioner has

demonstrated a rational basis for rejecting the government's plea offer and insisting on going to

trial on the five counts under § 860. *See Padilla*, 559 U.S. at 372.

Counsel's failure to properly advise petitioner may have also resulted in prejudice during

plea negotiations. *See Merzbacher v. Shearin*, 706 F.3d 356, 363 (4th Cir.) ("The Sixth

Amendment right to the assistance of counsel during criminal proceedings extends to the plea-

bargaining process." (citing *Missouri v. Frye*, 132 S. Ct. 1399, 1405 (2012)), *cert. denied*, 134 S.

Ct. 71 (2013), *reh'g denied*, 134 S. Ct. 725 (2013)). In other words, had counsel raised the

playground issue with the government during plea negotiations, the plea agreement offered by

the government could have been different. *See, e.g., Padilla*, 559 U.S. at 373 ("Counsel who

possess the most rudimentary understanding of the deportation consequences of a particular

criminal offense may be able to plea bargain creatively with the prosecutor in order to craft a

conviction and sentence that reduce the likelihood of deportation, as by avoiding a conviction for an offense that automatically triggers the removal consequence."); *Heard v. Addison*, 728 F.3d 1170, 1181 (10th Cir. 2013) (holding that defendant received ineffective assistance of counsel where counsel failed to make the prosecutor aware of case law, which could have been identified by "minimally competent counsel," that would have provided strong support for an argument that defendant's conduct did not satisfy the offense requirements, reasoning that "it is reasonably probable that bringing those cases to the prosecutor's attention during the plea-negotiation stage could have resulted in a better bargain, lesser charges, or even dismissal of the case altogether"). Ms. Stewart testified that while she discussed the 1,000-foot distance requirement with the government, she did not recollect any discussion regarding whether the subject playground met the statutory definition. (Tr. 25:2-15).

The government responds that petitioner's claim that his guilty plea was based on improper advice of counsel is contradicted by his sworn statements at his arraignment and Rule 11 hearing. Specifically, the government points to petitioner's statements at this hearing that his counsel had "answered all of [his] questions concerning [his] case and [his] plea" (Arr. Tr. 15:14-16), that he was "satisfied with [counsel's] representation" (*id.* at 15:17-19), and that he "underst[ood] the meaning of everything in the plea agreement" (*id.* at 20:16-20), including the "terms, language, words and phrases used in the plea agreement" (*id.* at 20:17-19).

The government is correct that, "absen[t] . . . extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established." *United States v. Lemaster*, 403 F.3d 216, 221-22 (4th Cir. 2005); *see also Lewis v. United States*, No. 4:12-CR-00068-FL-2, 2015 WL 2401514, at *5 (E.D.N.C. 20 May 2015) ("A defendant's sworn representations made at a plea hearing 'carry a strong presumption of verity' and 'constitute a

formidable barrier against any subsequent collateral proceedings.'" (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977))). In *United States v. White*, 366 F.3d 291 (4th Cir. 2004), the Fourth Circuit found that such "extraordinary circumstances" existed where the petitioner's allegations involved "an involuntary plea, a defendant relying on mistaken advice from constitutionally ineffective counsel, a plea agreement that does not contradict the defendant's understanding, and a Rule 11 colloquy that also fails to negate the erroneous advice provided by constitutionally ineffective counsel." *Id*. at 300. Based on the considerations previously discussed, this case presents precisely the "extraordinary circumstances" contemplated in *White*. Accordingly, petitioner's statements at the Rule 11 hearing do not preclude his claim that his plea was involuntary due to ineffective assistance of counsel.

The government asserts that even if petitioner were to receive the relief he requests—being resentenced for the lesser-included offense—his Guidelines range would have remained the same, and the only change to his sentence would be a reduction of his term of supervised release from ten years to five years. (Tr. 36:10 to 37:14). Specifically, the government argues that, even without the enhancement under § 860(a) and removal of the one-level increase in base offense level under Guidelines § 2D1.2(a)(2) for drug offenses near protected locations such as playgrounds (*see* PSR ¶ 40), petitioner's Guidelines range would have remained 360 months to life.

Regardless of whether the Guidelines range would have been different, the enhancement under § 860(a) increased the period of supervised release from five years to ten years. *See* 21 U.S.C. § 841(b)(1)(A)(iii) (as in effect from 27 July 2006 to 2 Aug. 2010) (providing for a five-year term of supervised release for violations involving 50 grams or more of cocaine base); PSR ¶ 53. The government fails to explain why this five-year increase in the term of supervised

release is insufficient to constitute prejudice. Indeed, courts have held to the contrary. *See Morales v. United States*, No. 3:12-CV-0194 MPS, 2014 WL 7369512, at *20 (D. Conn. 29 Dec. 2014) ("[W]hile an increase of five years' supervised release may not seem significant, even relatively short increases in the ultimate sentence received will suffice to show prejudice for purposes of an ineffective assistance claim." (citing *Brewer v. United States,* 551 Fed. Appx. 560 (11th Cir. 2014) (holding that defendant had satisfied the prejudice prong of an ineffective assistance of counsel claim where counsel's defective performance resulted in the improper imposition of consecutive terms of supervised release terms))).

While petitioner seeks the relief of being resentenced for the lesser-included offense of conspiracy to possess with the intent to distribute, the appropriate remedy is to vacate petitioner's conviction and permit him to withdraw his plea. *Freedman v. United States*, No. 7:10-CR-15-FL, 2013 WL 4014974, at *5 (E.D.N.C. 6 Aug. 2013) (holding that where a petitioner asserts that but for ineffective assistance of counsel he would not have pleaded guilty, "[t]he proper remedy is . . . to allow petitioner out of his plea agreement, to re-instate the indictment, and to allow petitioner to replead"); *see also Grooms v. United States*, No. CR 3:09-1174-CMC, 2013 WL 5771180, at *4 (D.S.C. 23 Oct. 2013) (where a petitioner accepted a plea due to ineffective assistance of counsel, "the proper remedy is to vacate the conviction (that is, allow petitioner to withdraw his plea)" (citing *United States v. Akinsade,* 686 F.3d 248 (4th Cir. 2012))), *aff'd,* 583 Fed. Appx. 46 (4th Cir. 2014). Accordingly, it will be recommended that petitioner's conviction be vacated and that he be permitted to withdraw his guilty plea.

### C. Failure to Adequately Investigate the Factual and Legal Basis of the § 860 Conspiracy Charge and to Object to the Factual Basis for the Plea

Another way in which petitioner contends that his trial counsel provided him ineffective assistance of counsel with respect to the § 860 conspiracy charge was her purported failure to

conduct adequate factual investigation and legal research regarding the charge, which prevented her from realizing that there was no factual basis for petitioner's plea to the charge, and her consequent failure to object at the Rule 11 hearing to the factual basis for the plea presented by the government.

There is unquestionably evidence of record supportive of petitioner's contention. At the evidentiary hearing, Ms. Stewart testified that after driving by the subject playground and reviewing the statutory definition, she concluded that "[i]t seemed pretty obvious" that it qualified. (Tr. 19:24 to 21:4). As the prior discussion makes clear, more thorough factual investigation and legal research regarding the definition of "playground" would have revealed significant issues regarding the viability of the § 860 conspiracy charge. Further, counsel's failure to be more thorough came despite the fact that, as she testified, this was her first case representing a defendant charged with a § 860 offense. (Tr. 22:22-25). It is indisputable that trial counsel did not object at the Rule 11 hearing to the government's presentation of the factual basis for petitioner's plea to the § 860 conspiracy charge. (*See* Arr. Tr. 26:3 to 27:20).

As seemingly deficient as counsel's failure to conduct further investigation and research may have been, the court questions whether it rises to the level of deficiency required under the first prong of *Strickland*. After all, she did conduct some investigation and research. The failure to object at the Rule 11 hearing was a direct outgrowth of the level of investigation and research counsel conducted. The court therefore questions as well whether it would satisfy the first prong of *Strickland*.

But the court need not resolve these issues, as well as the issue of whether petitioner suffered any prejudice from these alleged inadequacies within the meaning of the second prong of *Strickland*. The court's determination that trial counsel's failure to advise petitioner regarding

the definition of "playground" met both prongs of *Strickland* establishes petitioner's entitlement to relief on his claim of ineffective assistance of counsel regarding the § 860 conspiracy charge. The court therefore deems the additional bases petitioner advances for this claim to be moot.

### III. APPLICATION OF THE FSA UNDER *DORSEY* (Pet. 10-14, Ground 2)

Petitioner argues that he is entitled to be resentenced in accordance with the FSA, which increased the drug amounts required for the imposition of certain statutory mandatory minimum sentences for cocaine base trafficking offenses. In addressing the retroactive effect of the FSA, the United States Supreme Court held in *Dorsey* that "Congress intended the Fair Sentencing Act's new lower mandatory minimums to apply to post-Act sentencing of pre-Act offenders." *Dorsey*, 132 S. Ct. at 2335; *see also Vines v. United States*, No. 5:10-CR-48-FL, 2013 WL 443486, at *5 (E.D.N.C. 5 Feb. 2013) ("The FSA's penalties apply to all offenders who are sentenced after August 3, 2010, regardless of whether or not their crimes preceded that date."), *aff'd in part, appeal dismissed in part*, 594 Fed. Appx. 158 (4th Cir. 2015).

Here, petitioner was sentenced on 11 July 2011 based on the applicability of a ten-year mandatory minimum (*see* 21 U.S.C. § 841(b)(1)(A)(iii) (as in effect from 27 July 2006 to 2 Aug. 2010); PSR ¶ 54) instead of the FSA's lower five-year mandatory minimum (*see* 21 U.S.C. § 841(b)(1)(B)(ii), (iii) (effective 3 Aug. 2010)). However, as the government notes, petitioner's Guidelines range was 360 months to life (*see* PSR ¶ 51), which far exceeds even the ten-year mandatory minimum. Moreover, there is no evidence that the court would have imposed a lower sentence had the lower five-year mandatory minimum been applied. *See Foster v. United States*, No. 1:09-CR-00013-MR-DLH, 2014 WL 793139, at *7 (W.D.N.C. Feb. 26, 2014) (rejecting petitioner's claim that she was entitled to be resentenced under the FSA where her Guidelines range exceeded the higher mandatory minimum and where there was "no evidence that [the]

Court felt constrained from sentencing Petitioner to a lower sentence" based on the higher, pre-FSA mandatory minimum of 10 years (citing *United States v. Sturdivant*, 492 Fed. Appx. 433, 434 (4th Cir. 2012))), *appeal dismissed,* 580 Fed. Appx. 158 (4th Cir. 2014). Accordingly, petitioner's claim that he is entitled to be resentenced under the FSA is without merit.

## IV. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR FAILURE TO MAKE CERTAIN OBJECTIONS TO THE GUIDELINES CALCULATION (Pet. 15-22, Ground 3)

Petitioner asserts that his trial counsel rendered ineffective assistance by failing to make or fully pursue various objections to the factual and legal basis for the court's Guidelines calculation. Specifically, petitioner contends that counsel: (1) failed to object to a two-level enhancement under Guidelines § 2Dl.l(b)(12) because it violated the *Ex Post Facto* Clause of the Constitution; (2) failed to argue that the FSA should apply to his sentence; (3) failed to object to a three-level leadership role enhancement under Guidelines § 3Bl.l(b) on the grounds that it was not supported by sufficient evidence that petitioner's criminal activity involved five or more participants; and (4) failed to sufficiently object, under Guidelines § 6Al.3(a), to the reliability of evidence provided by co-defendant Bonds supporting the amount of drugs attributed to petitioner and petitioner's possession of a firearm. Petitioner further contends that had trial counsel made these objections, his Guidelines range would have been lower. The court will address each of these contentions in turn below.

### A. Failure to Object to Application of Guidelines § 2Dl.l(b)(12) in Violation of the *Ex Post Facto* Clause of the Constitution

Pursuant to Guidelines § 1B1.11(a), the sentencing court is required to "use the Guidelines Manual in effect on the date that the defendant is sentenced." Guidelines § 1B1.11(a). However, the Guidelines further provide that "[i]f the court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the *Ex*

*Post Facto* Clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed." Guidelines § 1B1.11(b)(1); *see also United States v. Foote*, 784 F.3d 931, 942 (4th Cir.) (noting the United States Supreme Court's recent holding that "the ex post facto clause is violated when a defendant is sentenced under current Guidelines providing a higher sentencing range than the Guidelines in effect at the time of the offense" (citing *United States v. Peugh*, 133 S. Ct. 2072 (2013))), *cert. denied*, --- U.S. ---, 2015 WL 2338980 (2015).

Here, the 2010 edition of the Guidelines Manual ("2010 Manual"), including the emergency amendments to Guidelines § 2D1.1 effective 1 November 2010, was used in the determination of petitioner's sentence. (*See* PSR 11). Petitioner contends that application of the 2010 Manual was an *ex post facto* violation and that he received ineffective assistance of trial counsel due to his trial counsel's failure to adequately object to such application. Petitioner's argument concerns the two-level increase he received in his base offense level for "maintain[ing] a premises for the purposes of manufacturing or distributing a controlled substance." (PSR ¶ 40). He argues that this increase violated the *Ex Post Facto* Clause because it was made pursuant to a Guidelines provision, § 2Dl.l(b)(12), that was added as part of the emergency amendments effective 1 November 2010, after the last date of his offense and related conduct, 22 July 2010. (*See id.* ¶¶ 40 (citing Guidelines § 2Dl.l(b)(12)), 12-15 (describing petitioner's offense and related conduct); Indict. ct. 1 (charging that the § 860 conspiracy continued "until on or about the date of this indictment," which was dated 21 July 2010 and filed 22 July 2010)). While petitioner's trial counsel did request use of the "old" Guidelines in her objections to the PSR (Ex. A to Pet. (D.E. 109 at 33)), the Probation Officer did not respond to this objection (*see*

PSR 14), and counsel did not pursue the issue further, including during petitioner's sentencing hearings (*see generally* 1st Sent. Tr.; 2d Sent. Tr.).

Application of the 2010 Manual was not an *ex post facto* violation as petitioner contends. The reason is that petitioner's Guidelines range under the 2009 edition of the Guidelines Manual ("2009 Manual") would have been the same as it was under the 2010 Manual.

Because petitioner's offense and relevant conduct involved controlled substances in addition to marijuana (*i.e.*, cocaine base and cocaine), determination of petitioner's base offense level requires conversion of the weight of these other controlled substances to their marijuana equivalents pursuant to Guidelines § 2D1.1, appl'n n.10(B). The PSR attributed to petitioner 6,010.2 grams of cocaine base; 3,315.35 grams of cocaine; and 453.6 grams of marijuana. (PSR ¶ 15).

Under the 2010 Manual, one gram of cocaine base was equivalent to 3,571 grams of marijuana and one gram of cocaine equivalent to 200 grams of marijuana. Guidelines § 2D1.1, appl'n n.10(D). Thus, as stated in the PSR, petitioner's marijuana equivalency for all three controlled substances under the 2010 Manual was 22,125.9 kilograms.[6] (PSR ¶ 15). This quantity corresponded to an unadjusted base offense level of 36 pursuant to Guidelines § 2D1.1(c)(2). The 2010 Manual provided for a five-level increase in this base offense level, as follows: the newly adopted two-level increase for maintaining a premises for manufacturing or distributing controlled substances pursuant to Guidelines § 2Dl.l(b)(12); the one-level increase for proximity to a playground pursuant to Guidelines § 2D1.2(a)(2); and a two-level increase for

---

[6] The calculation is as follows: (6,010.2 x 3,571 = 21,462,424.2) + (3,315.35 x 200 = 663,070) + 453.6 = 22,125,947.8 = 22,125.9 kilograms.

possession of a firearm pursuant to Guidelines § 2D1.1(b)(1).[7] (*See* PSR ¶ 40). This five-level increase brought the base offense level to 41. (*See id.*). This was also the total offense level. (*See id.* ¶ 48). Although there was a three-level enhancement for petitioner's leadership role under Guidelines § 3B1.1(b), this was offset by a three-level reduction for acceptance of responsibility under Guidelines § 3E1.1(b). (*See* PSR ¶¶ 43 (erroneously citing Guidelines § 3B1.1(c)), 47). The Guidelines range corresponding to a total offense level of 41 under the 2010 Manual was 360 months to life. *See* Guidelines, ch. 5, pt. A, Sentencing Table; (PSR ¶ 51).

Under the 2009 Manual, while the marijuana equivalency for cocaine would have been the same as in the 2010 Manual, the marijuana equivalency for cocaine base would have been different: one gram of cocaine base is equivalent to 20 kilograms of marijuana. Guidelines § 2D1.1, appl'n n.10(E) (2009). Thus, if the 2009 Manual had been applied, petitioner would have had a total marijuana equivalency of 120,867.524 kilograms[8] and a corresponding unadjusted base offense level of 38 pursuant to Guidelines § 2D1.1(c)(2) (2009).[9] As with the 2010 Manual, the 2009 Manual would have provided for a one-level increase for proximity to a playground pursuant to Guidelines § 2D1.2(a)(2) (2009) and a two-level increase for possession of a firearm pursuant to Guidelines § 2D1.1(b)(1)(2009), bringing the base offense level to 41. Thus, even without the two-level increase under the 2010 Manual § 2Dl.l(b)(12) for maintaining a premises for manufacturing or distributing controlled substances, petitioner's base offense level

---

[7] Although petitioner has also challenged the applicability of the two-level increase for possession of a firearm pursuant to Guidelines § 2D1.1(b)(1), the court has determined, as explained in Section IV.D. below, that this contention is without merit.

[8] The calculation is as follows: (6,010.2 x 20,000 =120,204,000) + (3,315.35 x 200 = 663,070) + 453.6 = 120,867,523.6 = 120,867.5236 kilograms.

[9] The court notes that while the 2009 Manual applies a two-level decrease to offenses involving cocaine base in combination with other controlled substances, this decrease is not applicable to petitioner because his offense conduct involved 4.5 kilograms or more of cocaine base, and is therefore excepted from the decrease. *See* Guidelines § 2D1.1, appl'n n.10(D)(ii)(I) (2009).

would have been the same under the 2009 Manual as under the 2010 Manual. The same three-level enhancement for petitioner's leadership role would have applied under Guidelines § 3B1.1(b) (2009), as would have the offsetting three-level reduction for acceptance of responsibility under Guidelines § 3E1.1(b) (2009). The total offense level under the 2009 Manual would therefore have also been the same, 41. The same Guidelines range of 360 months to life would also have applied. *See* Guidelines, ch. 5, pt. A, Sentencing Table (2009).

The court further notes that even if petitioner were ultimately resentenced under the 2009 Manual without the one-level increase under Guidelines § 2D1.2(a)(2) for drug offenses committed near a protected area, the resulting total offense level would be 40. With this total offense level, petitioner's Guidelines range under the 2009 Manual would remain 360 months to life. *See* Guidelines, ch. 5, pt. A, Sentencing Table (2009).

In sum, application of the 2010 Manual did not violate the *Ex Post Facto* Clause because petitioner's Guidelines range would have been the same under the 2009 Manual. Accordingly, counsel was not ineffective for failing to maintain an objection to use of the 2010 Manual.

### B. Failure to Argue that the FSA Should Apply

Petitioner asserts that he received ineffective assistance of counsel because his counsel failed to argue that the new lower mandatory minimums of the FSA should apply to him. Because, as discussed above, application of the FSA would not have affected his sentence, petitioner's ineffective assistance of counsel claim on this basis also fails.

### C. Failure to Challenge the Application of the Enhancement under Guidelines § 3B1.1(b)

Petitioner argues that trial counsel should have objected to the three-level increase in his offense level pursuant to Guidelines § 3B1.1(b), which applies "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more

participants or was otherwise extensive." Guidelines § 3B1.1(b); (*see* PSR ¶ 47 (erroneously citing Guidelines § 3B1.1(c))). The application notes to this section define "participant" as "a person who is criminally responsible for the commission of the offense, but need not have been convicted" and specify that "[a] person who is not criminally responsible for the commission of the offense (e.g., an undercover law enforcement officer) is not a participant." Guidelines § 3B1.1, appl'n n.1. The application notes further clarify that "[t]o qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants." *Id.* § 3B1.1, appl'n n.2; *see also United States v. Bartley*, 230 F.3d 667, 673 (4th Cir. 2000) ("[T]he enhancement is justified if the defendant managed or supervised the activities of at least one other person in a scheme that involved five or more participants.")

Petitioner does not dispute that his offense conduct qualifies him as a "manager or supervisor." Rather, he asserts that the PSR shows that there were only four participants in the charged § 860 conspiracy, and, therefore, the court should have imposed only a two-level increase under Guidelines § 3B1.1(c), which applies when there were fewer than five participants. He contends that the only participants identified were himself,[10] Bonds, Gregory Jordan, and Charles Bowser, and that the only other persons identified were either confidential informants making controlled buys or persons who merely purchased drugs from him.

Petitioner is correct that a person who only purchases drugs for his own use from a member of a drug conspiracy, including those making controlled buys under the direction of law enforcement, do not qualify as "participants" for the purpose of Guidelines § 3B1.1(b). *See United States v. Baker*, 539 Fed. Appx. 299, 304 (4th Cir. 2013) ("In drug cases, customers who are solely end users of drugs are not participants." (citing *United States v. Egge*, 223 F.3d 1128,

---

[10]    The defendant is counted as a "participant" for the purpose of Guidelines § 3B1.1(b). *See United States v. Tzeuton*, 370 Fed. Appx. 415, 424 (4th Cir. 2010) (citing *United States v. Fells*, 920 F.2d 1179, 1182 (4th Cir. 1990) ("[Defendant], as principal, should be included as a participant.")).

1133 (9th Cir. 2000) ("Where the customers are solely end users of controlled substances, they do not qualify as participants because their purchases do not constitute a commission of the offenses outlined in 21 U.S.C. § 841(a), absent an intent to distribute or dispense the substance."))). However, petitioner is mistaken that the PSR does not identify additional individuals who qualify as "participants." The description of the offense and related conduct indicates that there were three unindicted sources[11] who sold cocaine to petitioner or delivered cocaine to one of the locations used by him for storage and distribution in amounts worth $1,000.00 to $1,500.00. (PSR ¶¶ 12, 14). Given that these individuals were supplying drugs for further distribution by petitioner and his co-conspirators, they would be "criminally responsible" for the conspiracy. *See* Guidelines § 3B1.1, appl'n n.1. Accordingly, the PSR indicates that seven individuals were participating in the conspiracy, thereby supporting the court's application of the Guidelines § 3B1.1(b) enhancement. Because there was no basis for objection to the application of this enhancement, petitioner has failed to demonstrate deficient performance of counsel with respect to it necessary to satisfy the first prong of *Strickland*.

**D. Failure to Challenge the Statements of Bonds Used to Support Guidelines Enhancements**

Petitioner asserts that trial counsel either failed to raise or abandoned several objections to statements made by Bonds to investigators that were used at sentencing to support both the drug amount involved in the offense and petitioner's possession of a firearm during the offense.

First, petitioner contends that a statement Bonds made to federal agents four months prior to his arrest is inconsistent with a statement he made to investigators after he was arrested and

---

[11] Although the identity of these three individuals was not provided, the naming of participants is not required for the purposes of Guidelines § 3B1.1(b). *See United States v. Head*, 77 F.3d 472 (4th Cir. 1996) ("A 'participant' need not be named as a defendant and often is not.").

entered into a plea agreement requiring his cooperation. (PSR ¶ 14; 1st Sent. Tr. 5:8-21). Petitioner's argument is wholly without merit because the subject statements are not inconsistent.

According to the PSR, in a 12 April 2010 pre-arrest statement, Bonds told investigators that, for a period of three to six months, he sold approximately 1,980 grams of cocaine for petitioner. (PSR ¶ 13). On 7 February 2011, after his arrest and in furtherance of his agreement to cooperate, Bonds provided the following information to investigators:

> During 2008 and 2009, Bonds observed an unindicted source deliver $1,000 to $1,500 worth of cocaine base, two to three occasions per week, to [petitioner's] Pine Street address [$1,000 worth of cocaine base = 1 ounce; 2 ounces (56.7 grams) x 104 weeks = 5,896.8 grams of cocaine base].

(PSR ¶ 14 (bracketed text in original)). Bonds' statement that he *sold* 1,980 grams of *cocaine* for petitioner is in no way inconsistent with his statement that he observed petitioner *receive from a third party* 5,896.8 grams of *cocaine base*. Accordingly, petitioner's claim that his counsel's performance was deficient due to her failure to adequately challenge Bonds' statements as inconsistent fails.

Petitioner next contends that his trial counsel failed to challenge the reliability of Bonds' statements on a variety of grounds. Specifically, he contends that the reliability of Bonds' statements was undermined because: they were uncorroborated; Bonds made them pursuant to an agreement to cooperate with the government; and Bonds has a mental impairment that affects his ability to accurately recall past events.

"Due process requires that sentencing courts rely only on evidence with some minimal level of reliability . . . and the Guidelines themselves demand that the evidence used have 'sufficient indicia of reliability to support its probable accuracy,' Guidelines § 6A1.3(a)." *United States v. Powell*, 650 F.3d 388, 393-94 (4th Cir. 2011) (internal citations omitted). However, the Fourth Circuit has "repeatedly allowed a sentencing court to consider 'any relevant information

before it, including uncorroborated hearsay, provided that the information has sufficient indicia of reliability to support its accuracy.'" *Id*. at 392 (quoting *United States v. Wilkinson*, 590 F.3d 259, 269 (4th Cir. 2010)).

Contrary to petitioner's assertion, the record contains sufficient indicia of reliability to support the court's reliance on Bonds' statements. For example, the PSR contained information provided by Charles Bowser, a defendant in a related case, that substantiated Bonds' statements. Bowser, who purchased drugs from or supplied drugs to petitioner between 2008 and 2010, told investigators that "Bonds worked at the direction of [petitioner]" (PSR 5 ¶ 12), which is consistent with Bonds' statements that he sold drugs for petitioner in 2008 and 2009 (PSR 6 ¶ 14) and that petitioner purchased drugs from Bowser (PSR 5 ¶ 13). Also, both Bonds and Bowser told investigators that Bonds purchased "$20 rocks" of crack from Bowser. (PSR 4 ¶ 12, 5 ¶ 13).

Further, the court heard statements by the government that the information provided by Bonds had been corroborated by others. Specifically, the government represented that "[t]he agents have, through the information provided by other individuals who were involved in this conspiracy, for example, Charles [Bowser], Alfred Armstrong—the information that they have provided corroborates the information given by Ronald Bonds." (1st Sent. Tr. 7:18-22). In response to the court's specific inquiry of the government as to the reliability of Bonds, the government further stated:

> Your Honor, with [respect] to Mr. Bonds' reliability, the information that he's provided in this case and other cases has borne fruit in terms of furthering the investigation and proving truthful and reliable as it relates to defendants who have already been indicted and charged.

(2d Sent. Tr. 15:5-9).

In addition, petitioner's own statements to investigators and representations to the court substantiate information provided by Bonds relating to the scope of the conspiracy. Specifically, the government informed the court that it was seeking a 30% reduction in petitioner's sentence due to his cooperation:

> [Petitioner] provided information about his own drug network; those who were involved, his sources of supply, other targets that have been identified in the Washington County area. His information did forward the investigation into those individuals and has led to the arrest of some of his suppliers.

(1st Sent. Tr. 3:10-16). Petitioner's own counsel further informed the court that petitioner had named 24 individuals in furtherance of the investigation. (*Id*. at 3:22-24). This information provided by petitioner, himself, corroborates Bonds' statements pertaining to the scope of petitioner's drug distribution activities.

The court made specific findings regarding the reliability of Bond's statements. At the second sentencing hearing, the court explained that "[b]ased on the information provided by the probation office in this case and the additional support as offered by the government, the statements of Ronald Bonds have been appropriately considered." (2d Sent. Tr. 15:13-16). The court also made clear on multiple occasions that it had considered the entire record and the PSR. (*See, e.g.*, 1st Sent. Tr. 9:7-24; 2d Sent. Tr. 3:16 to 4:2; 6:4-8).

Because the court finds that there are sufficient indicia of reliability to support Bonds' statements, it concludes that petitioner's ineffective assistance claim on this ground is without merit.

## V. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR FAILURE TO OBJECT TO ALLEGED PROSECUTORIAL MISCONDUCT (Pet. 20-22, Ground 3)

Petitioner asserts that his counsel decided not to call Bonds to testify at the continued sentencing hearing, on 11 July 2011, because government counsel threatened to charge petitioner

with witness tampering under 18 U.S.C. § 1512 if he did call Bonds.  Petitioner contends that this alleged threat constituted prosecutorial misconduct, that his counsel should have raised an objection on this ground, and that counsel's failure to do so ultimately prevented him from presenting Bonds' testimony.  He argues that had Bonds testified, "there is a reasonable probability that the court would have found a lower drug amount."  (Pet.'s Mem. 30). Petitioner's claim is without merit.

Prior to the first sentencing hearing, on 2 June 2011, petitioner's counsel sought (D.E. 63), and the court granted (D.E. 67), a writ of *habeas corpus ad prosequendum* to produce Bonds at the sentencing hearing to testify.  Counsel's decision to present this testimony was based on her initial assessment that Bonds had given investigators inconsistent statements about the amount of drugs attributable to petitioner.  (*See* Pet. for Writ ¶ 1; 1st Sent. Tr. 4:13-22).  At the hearing, the government expressed concerns about Bonds testifying because he had entered into a plea agreement that required him to cooperate and any testimony by him that conflicted with his statements to investigators would constitute a violation of the plea agreement and could subject him to perjury charges.  (*Id*. at 5:8 to 6:9, 12:3-17).  Bonds was present at the hearing, but the court continued it when Bonds stated that before testifying he wanted to talk to his counsel, who was not present.  (*Id*. at 14:8-23).

At the continued sentencing hearing, the government argued that petitioner should receive no more than a 30% reduction from the bottom of his Guidelines range because, while awaiting sentencing, he had continued to engage in criminal activity.  Specifically, the government alleged that, following the first sentencing hearing, petitioner had influenced Bonds, who was housed in the same jail as petitioner, to write a letter stating that Bonds' statement to investigators about the amount of drugs attributable to petitioner had been misunderstood.  (2d

Sent. Tr. 20:15-22; *see also* 3 June 2011 Letter (D.E. 109) 35-36). The government further stated that despite this alleged continuing criminal activity, it "ha[d] not withdrawn his acceptance of responsibility nor [had it] charged him with . . . attempted witness tampering, and [it] stood by the 5K motion based on the information that [petitioner] provided to other individuals." (2d Sent. Tr. 21:2-5). The government did, though, take the position that the court should not, as requested by petitioner, depart downward more than 30%. (*Id.* at 21:6-8).

Petitioner asserts that he did not, as alleged by the government, influence Bonds to write a letter retracting his earlier statements to investigators. However, he has failed to present, as required by Rule 56, any evidence or sworn statements that support his contention. To the contrary, petitioner included as an exhibit to his motion (Ex. C to Pet. (D.E. 109 at 38)) a letter from Bonds' counsel to petitioner's counsel prior to the continued sentencing hearing in which Bonds' counsel stated that, if called, Bonds would testify that

> the letter [Bonds wrote to investigators] was the product of the influence and intimidation of [petitioner] (they are not only housed in the same pod but also share a bunk at the jail) and does not accurately reflect his recollection of his involvement with [petitioner] in the possession and distribution of controlled substances. [Bonds] would further testify, if asked, that the unprotected statement he made to law enforcement authorities at the time of his arrest accurately reflects his involvement with [petitioner], both as to the weight of the drugs and the length of time that he was involved with [petitioner].

(*Id.*). This predicted testimony would not only have undermined petitioner's challenge to the reliability of Bonds' statements about the drug amounts, it would have also provided evidence to support the witness tampering alleged by the government. Accordingly, petitioner has failed to demonstrate that his trial counsel's decision not to present Bonds' testimony was objectively unreasonable in satisfaction of the first *Strickland* prong.

Even if petitioner had made this showing, he has not demonstrated any resulting prejudice. For example, as previously discussed, Bonds' statements to investigators regarding

drug amounts were not inconsistent. Consequently, petitioner failed to show that his counsel's decision not to call Bonds deprived petitioner of the opportunity to address any such inconsistencies. Nor has petitioner otherwise demonstrated prejudice from his trial counsel's not calling Bonds as a witness. Accordingly, petitioner's ineffective assistance claim also fails for lack of satisfaction of the second *Strickland* prong.

## VI.  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL FOR FAILURE TO RAISE CERTAIN ISSUES ON APPEAL (Pet. 23-26, Ground 4)

Lastly, petitioner asserts that he received ineffective assistance during his appeal due to appellate counsel's failure to raise the following arguments in the appeal of his sentence: (1) there was an insufficient factual basis for petitioner's plea with respect to the "playground" element of § 860; and (2) petitioner was entitled to be resentenced in accordance with the FSA. Regarding the "playground" issue, because the court has concluded that petitioner is entitled to have his conviction vacated on this ground, his ineffective assistance of appellate counsel claim on this basis is moot.

With respect to the FSA claim, as discussed above, the application of the FSA would not have affected petitioner's sentence. Accordingly, petitioner's claim of ineffective assistance of appellate counsel for failure to raise the issue on appeal is without merit.

**<u>CONCLUSION</u>**

For the foregoing reasons, IT IS RECOMMENDED that petitioner's motion (D.E. 109) be GRANTED with respect to Ground 1, that his sentence be vacated, and that he be permitted to withdraw his guilty plea. With respect to all other claims raised in his motion, IT IS RECOMMENDED that the government's motion (D.E. 119) to dismiss or for summary judgment be GRANTED and that these remaining claims be DISMISSED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 31 July 2015 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Any response to objections shall be filed within 14 days after the filing of the objections.

This 17th day of July 2015.

James E. Gates
United States Magistrate Judge